# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued April 7, 2015                    Decided July 10, 2015

No. 14-7060

UNITED STATES OF AMERICA, EX REL. MICHAEL L. DAVIS,
AND
MICHAEL L. DAVIS,
APPELLANT

v.

DISTRICT OF COLUMBIA,
APPELLEE

———

Consolidated with 14-7061

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:06-cv-00629)

———

*Sara M. Lord* argued the cause for appellant/cross-appellee. With her on the briefs were *Tenley A. Carp* and *Jeffrey S. Jacobovitz.*

*Stacy L. Anderson*, Senior Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for appellee/cross-appellant. With her on the

brief were *Karl A. Racine*, Attorney General, *Todd S. Kim*, Solicitor General, and *Loren L. AliKhan*, Deputy Solicitor General.

Before: ROGERS and GRIFFITH, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: Upon remand of Michael L. Davis's *qui tam* lawsuit, *see United States ex rel. Davis v. District of Columbia*, 679 F.3d 832 (D.C. Cir. 2012) ("*Davis I*"), the district court ruled that the District of Columbia violated the False Claims Act when it submitted a Medicaid reimbursement claim for FY 1998 and imposed the maximum penalty of $11,000. *United States ex rel. Davis v. District of Columbia*, 34 F. Supp. 3d 30 (D.D.C. 2014) ("*Davis II*"). Davis appeals, contending the district court erred in ruling the District submitted only one false claim. The District cross appeals, contending it is entitled to summary judgment because it made no false claim. The relevant federal regulations, which were incorporated into the District's Medicaid State Plan, required the District to maintain records supporting its Medicaid reimbursement claims that could be produced for audit. Pursuant to contractual obligations, Davis's firm, Davis & Associates, Inc., was to prepare the FY 1998 interim Medicaid claims and year-end cost report, and consequently his firm, not the District, had physical possession of the underlying documentation supporting the District's claim. Given this arrangement, the District reasonably understood when it submitted the claim for payment that it could, through Davis & Associates, make the supporting records available for audit. Accordingly, we reverse and remand the case with instructions to enter judgment for the District.

3

**I.**

The District of Columbia is eligible for reimbursement by the federal government for a portion of the cost of providing health-related services to Medicaid-eligible children pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 *et seq.* 42 U.S.C. § 1396b(c). The District of Columbia Public Schools ("DCPS") has been certified as a provider of such services, including services for severely disabled students in the Mamie D. Lee and Sharpe Health Schools and for students in regular educational settings, as well as transportation for students on days when a student receives a Medicaid-eligible service. The version of the District's Medicaid State Plan in effect in 1998 provided that DCPS would be reimbursed in accordance with the "Principles of Reasonable Cost Reimbursement described at 42 CFR § 413, subparts A.-G."

Pursuant to these principles, Medicaid reimbursement operated in two stages. Throughout the fiscal year, providers of health-related services such as DCPS submitted interim claims to the D.C. Medical Assistance Administration ("MAA") and received interim payments based on fixed estimates of their actual costs. *See* 42 C.F.R. §§ 413.60(a), (c), 413.64(a), (f). At the end of the fiscal year, providers submitted cost reports of their actual expenditures, *see id.* §§ 413.60(b), 413.64(f), and following an audit, "a final adjustment [was] made" to settle the difference between the interim payments and a provider's actual costs, *id.* § 413.64(f)(2). The federal government contributed approximately 70 percent of the funds paid to providers by MAA in 1998, and the District contributed the remaining 30 percent.

The principles of reasonable cost reimbursement further required providers such as DCPS, upon penalty of suspension of payments, *id.* § 413.20(e), to "provide adequate cost data"

supported by "financial and statistical records which must be capable of verification by qualified auditors," *id.* § 413.24(a); the cost information had to "be accurate and in sufficient detail" "to support payments made for services furnished to beneficiaries," *id.* § 413.24(c); *see also id.* § 413.20(d) (recordkeeping requirements).

In 1995, DCPS awarded Health Management Systems, Inc., a contract to design, develop, and implement a "Medicaid Reimbursement Recovery Program" for DCPS's special education program. Davis's firm, Davis & Associates, was a subcontractor that, for a period of years, "acting on behalf of DCPS," was responsible for collecting and submitting data to MAA for the payment of interim claims, reconciling approved, denied, and pending claims, and "maintaining original claim documentation for audit purposes." Davis & Associates prepared, submitted, and retained supporting documentation for interim claims by DCPS's special education program during FY 1998. It was informed in December 1998 that the firm's contract would not be renewed and that it would be replaced by Maximus, Inc., beginning in FY 1999. Davis & Associates prepared a year-end cost report for FY 1998, but DCPS declined to submit it. Davis & Associates retained previously collected supporting documentation provided by DCPS that Davis avers was sufficient and appropriate to justify the reimbursement request his firm prepared.

Instead of using the report prepared by Davis & Associates, DCPS submitted two FY 1998 cost-settlement reports prepared by Maximus: one in January 2000 setting forth DCPS's expenditures on health-related services for special education students (the "Special Education Cost Report") and another between January and May 2000 stating its expenditures on transportation for those students (the "Transportation Cost Report"). The Transportation Cost Report stated that it had been

prepared by comparing the paid interim health-related service claims submitted by Davis & Associates to the roster of Medicaid-eligible students authorized to receive transportation services, in order to derive the number of "service days" DCPS provided transportation, and then multiplying that number by DCPS's per-student, per-day reimbursable transportation costs. It ultimately calculated that the District was owed an additional $1.7 million in unreimbursed federal funds.

MAA informed DCPS in May 2000 that its auditor, Bert Smith & Company, was auditing the final cost reports for fiscal years 1996, 1997, and 1998. *See* 42 C.F.R. § 413.64(f)(2). In July 2001, Bert Smith submitted to the District a final report on the FY 1998 Transportation Cost Report that identified approximately $9.5 million in Medicaid-eligible costs incurred by DCPS's transportation system; this netted out (after accounting for the interim payments and applying the federal reimbursement rate) to the District being owed $5.4 million in federal Medicaid funds for transportation services. Upon examination of both the FY 1998 Special Education and Transportation Cost Reports, however, Bert Smith recommended that the District return approximately $7.6 million in federal funds for FY 1998.

In 2002, MAA advised the Centers for Medicare and Medicaid Services ("CMS"), the federal agency administering the Medicaid program, "that it was encountering difficulties in determining final reimbursement amounts to DCPS for services rendered from 1996 through 1998 because the cost information from DCPS was incomplete." CMS, Focused Financial Management Review 1 (2003). After performing a "brief FM review," spending a day and a half at Bert Smith and examining its process, CMS concluded that Bert Smith had, in the face of "incomplete and insufficiently detailed cost information" from DCPS, "applied sensible, practical testing and conservative

judgments to determine allowable Medicaid costs" and that MAA should finalize the $7.6 million settlement proposed by Bert Smith. *Id.* at 2–4.

On April 4, 2006, Davis filed a *qui tam* lawsuit alleging that the District violated the False Claims Act, 31 U.S.C. § 3729(a), by submitting, through DCPS, the Maximus FY 1998 year-end cost reports when it knew it "did not have in [its] possession documentation to support and verify that Medicaid reimbursable services were provided." Compl. ¶ 30. His amended complaint identified the date the allegedly false claim was submitted as January 2000. *See* Am. Compl. ¶ 15. The district court initially dismissed the complaint on the ground that, under this court's precedent, Davis was not an original source of the information. *United States ex rel. Davis v. District of Columbia*, 773 F. Supp. 2d 21, 33 (D.D.C. 2011); *see* 31 U.S.C. §§ 3730(e)(4)(A)–(B) (2000). After this court concluded the Supreme Court had overruled that precedent, *see Davis I*, 679 F.3d at 837–39, and remanded the case, the district court granted in part and denied in part the parties' cross motions for summary judgment, *Davis II*, 34 F. Supp. 3d at 50.

In moving for summary judgment, Davis argued in his memorandum of points and authorities that DCPS did not possess service documentation supporting the Maximus FY 1998 year-end cost reports. He asserted in the statement of material facts supporting his motion for summary judgment that DCPS is required to maintain both cost documentation, showing a provider's expenditures on health-related services, and service documentation, such as medical records and progress notes that show a Medicaid-eligible child received a reimbursable service on a given day. The District opposed Davis's motion and also moved for summary judgment, arguing that Davis's claims were barred by the statute of limitations and that Davis had failed, after discovery, to present any evidence the District had

knowingly submitted a false claim to the federal government.

The district court agreed with the District that Davis's claims regarding the FY 1998 Special Education Cost Report were time barred, *Davis II*, 34 F. Supp. 3d at 38–41, and Davis has not appealed.  The court agreed with Davis that the District made a false claim when DCPS submitted the FY 1998 Transportation Cost Report for payment because Davis & Associates, not DCPS, had physical possession of the required supporting documentation at that time, *id.* at 43; the maintenance of such documentation was material to the federal government's decision to pay the reimbursement requested, *id.* at 44–45; and DCPS submitted the false claim knowingly, *id.* at 46–47.  The court rejected the District's position that it had constructive possession under an implied agency theory, finding there was no evidence that "the Maximus Reports were prepared or submitted in reliance on documents in Davis's possession," and "the District had already fired Davis" when it submitted the Transportation Cost Report to MAA in 2000.  *Id.* at 43.  The court imposed the maximum $11,000 penalty for one false claim.  *Id.* at 48–49.

Both parties appeal, and our review is *de novo*, *see United States ex rel. Folliard v. Gov't Acquisitions, Inc.*, 764 F.3d 19, 25–26 (D.C. Cir. 2014), although in view of our disposition of the District's cross appeal, there is no need to address Davis's appeal of the number of false claims.

**II.**

To establish a violation of the False Claims Act, 31 U.S.C. § 3729(a), a party may prove "that the defendant presented . . . a claim to the government, that the claim was false, and that the defendant knew that the claim was false." *United States ex rel. Hampton v. Columbia/HCA Healthcare Corp.*, 318 F.3d 214,

218 (D.C. Cir. 2003).  A claim is legally false "when it rests on a false representation of compliance with an applicable federal statute, federal regulation, or contractual term." *United States v. Sci. Applications Int'l Corp.* ("*SAIC*"), 626 F.3d 1257, 1266 (D.C. Cir. 2010).  Such a certification may be implied, and "[c]ourts infer implied certifications from silence" when a claimant fails to comply with obligations that are "'a prerequisite to the government action sought.'" *Id.* (quoting *United States ex rel. Siewick v. Jamieson Sci. & Eng'g, Inc.*, 214 F.3d 1372, 1376 (D.C. Cir. 2000)).  Only false claims "knowingly" made — *i.e.*, with "actual knowledge of the [false] information," "deliberate ignorance of the truth or falsity of the information," or "reckless disregard of the truth or falsity of the information," — give rise to liability.  31 U.S.C. §§ 3729(a)–(b) (2000).  "[R]eckless disregard" in this context is "an extension of gross negligence." *United States v. Krizek*, 111 F.3d 934, 942 (D.C. Cir. 1997).  To establish knowledge on the basis of an implied false certification, Davis had to prove that the District, acting through DCPS, knew both that it violated a legal obligation and that its compliance was a condition of payment. *SAIC*, 626 F.3d at 1271.

Davis does not challenge that DCPS provided the claimed services to Medicaid-eligible special education students. *Davis I*, 679 F.3d at 840.  In response to the District's cross appeal, he contends only that DCPS falsely certified when it submitted the FY 1998 Transportation Cost Report that it had the records to verify the services were provided on a particular day.  Because the record shows that DCPS had arranged with Davis & Associates to maintain appropriate documentation supporting its Medicaid claims, in compliance with the federal document retention requirements incorporated into the District's State Plan, and that DCPS reasonably understood when it submitted the FY 1998 Transportation Cost Report that it could produce the underlying documentation for audit, the Transportation Cost

Report contains no implied false certifications, and the District made no false claim.

The federal regulations incorporated into the District's State Plan required providers to maintain adequate documentation for audit. Providers were to produce for examination "such records and documents as are necessary to ascertain information pertinent to the determination of the proper amount of program payments due." 42 C.F.R. § 413.20(d)(2) (1999); *see also id.* § 413.24(a). These regulations, on which Davis relies, provided that "[a]dequate cost information" "capable of being audited" — *i.e.*, data that is "accurate and in sufficient detail" to verify payments — "must be obtained from the provider's records." *Id.* § 413.24(c). CMS would suspend payments to a provider that failed to "maintain . . . adequate records for the determination of reasonable cost." *Id.* § 413.20(e).

Not all failures to comply with a federal statute or regulation expose a provider to liability under the False Claims Act. "[A] false certification of compliance with a statute or regulation cannot serve as the basis for a *qui tam* action under the [False Claims Act] unless payment is conditioned on that certification." *Siewick*, 214 F.3d at 1376. In other words, a defendant may be held liable under the False Claims Act for falsely certifying it complied with a statute or regulation only if "certification was a prerequisite to the government action sought." *Id.* The parties dispute whether the regulations the District allegedly violated are conditions of payment, rather than conditions of participation in the Medicaid program. Several of our sister circuits have recognized the difference and cautioned against treating all Medicare and Medicaid regulations as conditions of payment. *E.g.*, *United States ex rel. Hobbs v. MedQuest Assocs., Inc.*, 711 F.3d 707, 714 (6th Cir. 2013); *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 310–11 (3d Cir. 2011); *United States ex rel. Conner*

*v. Salina Reg'l Health Ctr., Inc.*, 543 F.3d 1211, 1220 (10th Cir. 2008); *Mikes v. Straus*, 274 F.3d 687, 699–700 (2d Cir. 2001).

We need not decide whether the regulations at issue here are "prerequisites" to payment because, even if they are, Davis has not met his burden to show that the District was in knowing violation of these regulations when DCPS submitted the FY 1998 Transportation Cost Report. Nothing in the District's State Plan or the Medicaid regulations on which Davis relies conditioned payment on DCPS's *physical possession* of documentation supporting its year-end cost reports. DCPS was required only to "maintain" documentation such that the information could be "obtained" for audit. *See* 42 C.F.R. §§ 413.20(e), 413.24(c) (1999). Davis conceded as much in his sworn False Claims Act disclosure statement, *see* 31 U.S.C. § 3730(b)(2) (2000), averring that for FY 1996, Davis & Associates, not DCPS, supplied documentation of DCPS's Medicaid claims to CMS for audit, and CMS "approved all DCPS Special Education direct service and transportation Medicaid reimbursement claim payments." Michael L. Davis Disclosure Statement 3 (Apr. 2006) ("Davis Statement").

Davis has failed to show a "genuine dispute," FED. R. CIV. P. 56(a), over whether DCPS reasonably could have relied on the same arrangement when it submitted the FY 1998 Transportation Cost Report. Unlike for service documentation, he does not challenge DCPS's possession of adequate cost documentation. Nor does he dispute that adequate service documentation existed supporting DCPS's FY 1998 interim claims. Instead, Davis claims that his firm, Davis & Associates, had "sufficient and appropriate documentation" in its possession when it submitted the FY 1998 interim claims and prepared a FY 1998 year-end cost report on behalf of DCPS and that the firm "maintained" and "retained" such documentation. Pl.'s Resp. Def.'s Statement Facts ¶¶ 16, 19; Davis Statement at 2–3.

Davis suggested during oral argument that it is unclear whether the documents in his firm's possession fully support the expenses claimed in the FY 1998 Transportation Cost Report because he does not know what services Maximus included in its report. But the Maximus Transportation Cost Report stated that Maximus based its calculations on the interim claims submitted by Davis & Associates, and Davis claims his firm retained adequate documentation supporting those claims.

Davis's position that, unlike in FY 1996, Davis & Associates was not under contract with DCPS when it submitted the Transportation Cost Report, and therefore DCPS could not reasonably expect his firm to produce the underlying documentation for audit, is belied by the record, which shows that Davis & Associates was the contractor responsible for DCPS's FY 1998 Medicaid claims. In his disclosure statement Davis averred that Davis & Associates prepared DCPS's interim Medicaid claims and a year-end cost report for FY 1998, and he alleged in his amended complaint that his firm prepared that report "[p]ursuant to the terms of its contract," Am. Compl. ¶ 13. Davis also averred in his disclosure statement that he informed DCPS that "Maximus had not been the DCPS Medicaid contractor for FY98," Davis Statement at 2, and he admitted in moving for summary judgment that Maximus was not hired until May 1999, Pl.'s Statement Material Facts ¶ 11. Davis has failed to show that Davis & Associates did not have a continuing contractual duty to complete the work relating to DCPS's FY 1998 Medicaid claims.

There is no dispute that Davis & Associates's duties "on behalf of DCPS" included "maintaining original claim documentation for audit purposes," Def.'s Statement Material Facts Not in Dispute ¶ 15; Pl.'s Resp. Def.'s Statement Facts ¶ 15; *see* Davis Statement at 1, and that the records in the firm's possession were the property of DCPS. Furthermore, Davis

conceded during oral argument that there was no dispute over his willingness to produce the documentation for audit until *after* DCPS made the alleged implied false certifications when it submitted the FY 1998 Transportation Cost Report in early 2000. *See* Oral Arg. Recording 10:29–10:44. Davis also acknowledged in his disclosure statement that he refused to produce the necessary documentation because he thought Davis & Associates had not been appropriately compensated, not because there was no contract between his firm and DCPS covering services for FY 1998. *See* Davis Statement at 3–4. Consequently, DCPS reasonably relied on Davis & Associates to maintain appropriate documentation for audit when it submitted the FY 1998 Transportation Cost Report and did not demonstrate "gross negligence" in discharging its legal obligations. *See Krizek*, 111 F.3d at 942.

Davis's suggestion, first raised during oral argument, that DCPS was required as a condition of payment not only to maintain the underlying service documentation for audit, but to generate the FY 1998 Transportation Cost Report directly from that documentation, comes too late. Generally, arguments raised for the first time at oral argument are forfeited. *See, e.g.*, *Trumpeter Swan Soc'y v. EPA*, 774 F.3d 1037, 1043–44 (D.C. Cir. 2014); *Williams v. Romarm, SA*, 756 F.3d 777, 782–83 (D.C. Cir. 2014). Davis neither raised this argument in the district court nor in his briefs on appeal, and he offers no explanation, much less exceptional circumstances, to excuse his failure to do so, *see Adams v. Rice*, 531 F.3d 936, 944–45 (D.C. Cir. 2008); *cf. Lesesne v. Doe*, 712 F.3d 584, 588 (D.C. Cir. 2013); *Meijer Inc. v. Biovail Corp.*, 533 F.3d 857, 867 (D.C. Cir. 2008). Such sandbagging is not sanctioned by the court. *E.g.*, *Williams*, 756 F.3d at 783; *cf. Se. Mich. Gas Co. v. FERC*, 133 F.3d 34, 39 n.2 (D.C. Cir. 1998).

Accordingly, because DCPS reasonably understood its contractual arrangement with Davis & Associates to fulfill its obligation to maintain records "capable of being audited," 42 C.F.R. § 413.24(c) (1999), we reverse the grant of summary judgment for Davis and remand the case with instructions to enter summary judgment for the District.