# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 6, 2016        Decided December 9, 2016

No. 15–7143

MANU KENNEDY,
APPELLANT

v.

MURIEL BOWSER,
MAYOR OF WASHINGTON, DISTRICT OF COLUMBIA, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:13-cv-01384)

———

*Richard T. Seymour* and *Shannon C. Leary* argued the cause for the appellant. *Gary M. Gilbert* was on the briefs.

*P. David Lopez*, General Counsel, Equal Employment Opportunity Commission, *Jennifer S. Goldstein*, Associate General Counsel, *Lorraine C. Davis*, Assistant General Counsel, and *Philip M. Kovnat*, Attorney, were on the brief for *amicus curiae* Equal Employment Opportunity Commission in support of the appellant.

*Stacy L. Anderson*, Senior Assistant Attorney General, Office of the Solicitor General, argued the cause for the appellees. *Karl A. Racine*, Attorney General for the District

of Columbia, *Todd S. Kim*, Solicitor General, and *Loren L. AliKhan*, Deputy Solicitor General, were with her on the brief.

Before: HENDERSON and GRIFFITH, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

Concurring opinion filed by *Circuit Judge* GRIFFITH.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Manu Kennedy was a fireman with the District of Columbia (District) Fire and Emergency Medical Services Department (Department). He had a beard. Department policy required him to shave it. Because of a medical condition, however, he could not do so without discomfort and infection. He asked the Department to accommodate his condition. The Department refused. Kennedy sued, alleging 28 counts of discrimination. As relevant here, he alleged disability discrimination under the Americans with Disabilities Act of 1990 (ADA) and related statutes, arguing that his condition was a "disability" as defined by the ADA Amendments Act of 2008 (Amendments Act or Act). The district court dismissed eight counts resting on that definition. It later denied reconsideration. Kennedy appeals the latter order on an interlocutory basis under 28 U.S.C. § 1292(b).

Section 1292(b) provides an appellate court with jurisdiction to review an interlocutory order only "if application is made to it within ten days after the entry of the order[.]" Kennedy did not satisfy that condition. He filed a notice of appeal in the district court two days after the court denied reconsideration. But he waited several weeks before filing his application in this Court. He does not dispute that his application was late and therefore inadequate under section

1292(b). Instead he contends that the notice of appeal and the order denying reconsideration, both of which were transmitted to this Court within the statutory period, serve the same purpose as an application and can be treated as such. We disagree. Even assuming the "functional equivalent" of an application satisfies section 1292(b) and Rule 5 of the Federal Rules of Appellate Procedure—an issue we do not decide—the notice and order here do not meet that description. Absent a timely application, we lack jurisdiction. *Carr Park, Inc. v. Tesfaye*, 229 F.3d 1192, 1194 (D.C. Cir. 2000) (per curiam). Accordingly, and for the reasons below, we dismiss Kennedy's appeal.

## I. BACKGROUND

Kennedy attempts to appeal the dismissal of several claims. We therefore "accept all the well-pleaded factual allegations of the complaint as true and draw all reasonable inferences from those allegations in [his] favor." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015). Because we do not—indeed cannot—pass upon the merits, *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-95 (1998), we recite the facts and procedural history only as necessary to provide context for dismissing the appeal.

### A. ALLEGED DISCRIMINATION

In 2001, the Department implemented a policy prohibiting beards. The policy was meant to ensure that every firefighter's respirator fit properly. Kennedy began working for the Department in 2002 and complied with the policy for several years. He did so even though he suffered from pseudofolliculitis barbae, a condition that can cause ingrown hairs, irritation, sores and infection from shaving.

By May 2008, Kennedy had an infected spot on his face that did not heal because of his close shaving. His dermatologist told him that he needed to maintain facial hair of at least one-eighth inch. Kennedy followed his physician's recommendation and in July 2008 arrived at work with a beard. He gave the Department documentation of his physician's opinion and sought an accommodation for his condition. The Department denied his request and temporarily suspended him.

In September 2008, the Congress passed the Amendments Act, Pub. L. No. 110-325, 122 Stat. 3553, "to broaden the definition of a disability" under the ADA, 42 U.S.C. §§ 12101 *et seq.* *Nurriddin v. Bolden*, 818 F.3d 751, 757 n.4 (D.C. Cir. 2016) (per curiam); *compare* 42 U.S.C. § 12102(2) (1990) (earlier definition), *with* Amendments Act § 4(a), 122 Stat. at 3555-56 (expanded definition). The Congress found that courts had unduly "narrowed the broad scope of protection intended to be afforded by the ADA" and "incorrectly found in individual cases that people with a range of substantially limiting impairments are not people with disabilities[.]" Amendments Act § 2(a)(4), (6), 122 Stat. at 3553. The Act took effect on January 1, 2009. Amendments Act § 8, 122 Stat. at 3559.

In 2009 through 2013, between absences owing to suspension, stress and depression, Kennedy continued to work at the Department. But because he had a beard—and even though he had passed a "fit test" demonstrating that he could safely wear a respirator over it—the Department limited him to office duty, training and fire inspections. At least twice after January 1, 2009, Kennedy sought an accommodation permitting him to work—bearded—full time in the field. The Department either denied the requests or did not act on them. Kennedy resigned in May 2013.

**B. KENNEDY'S COMPLAINT**

In September 2013, Kennedy filed suit against the District, the Department and several officials. The district court dismissed from the suit all defendants except the District. The complaint alleged 28 counts of discrimination. At issue here are eight counts that allege violations of 42 U.S.C. § 1983 (Counts 6, 9 and 13); the District of Columbia Human Rights Act of 1977, D.C. CODE §§ 2-1401.01 *et seq.* (Counts 10 and 14); and the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.* (Counts 22, 23 and 24). Those eight counts rest on Kennedy's claim that his condition, pseudofolliculitis barbae, is a disability within the meaning of the ADA.

**C. DISTRICT COURT'S DISMISSAL OF COUNTS AND CERTIFICATION OF APPEAL**

In March 2015, the district court dismissed those eight counts. It recognized that, before it could determine whether Kennedy had alleged facts sufficient to stave off dismissal, it had to decide whether the Amendments Act applied. It held that the Act did not apply and that "the pre-amendment liability standards govern this case." Mem. Op. 9, Dkt. No. 21 (Mar. 20, 2015). In reaching its conclusion, the court emphasized that the Act "did not become effective until January 1, 2009, and it does not have retroactive effect." *Id*. at 7 (citing *Lytes v. D.C. Water & Sewer Auth.*, 572 F.3d 936 (D.C. Cir. 2009)). In the court's view, applying the Act's expanded definition of a disability even to the Department's post-enactment failures to accommodate Kennedy's condition gave the Act retroactive effect because the Department's conduct related back to the 2008 request for an accommodation. The court then held that Kennedy's condition did not meet the pre-2009 definition of a disability. It did not address whether his condition is a disability under the expanded definition.

6

In April 2015, Kennedy moved the district court to reconsider its decision.[1] Alternatively, he asked the court to amend its March 2015 order by certifying it for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

On November 16, 2015, the district court denied reconsideration but certified for immediate appeal "the issue of whether the [expanded] definition of 'disability' applies to Kennedy's complaints . . . ."[2] Mem. Op. & Order 9, Dkt. No. 30 (Nov. 16, 2015). The court concluded that the issue is "'a controlling question of law'"; "'there is substantial ground for difference of opinion'" about it; and an interlocutory appeal "'may materially advance the ultimate termination of the litigation.'" *Id*. (quoting 28 U.S.C. § 1292(b)). In acknowledging substantial ground for difference of opinion,

---

[1] Kennedy styled his motion as one to alter or amend judgment. Because the district court's March 2015 order did not resolve all of his claims or result in a judgment, however, the court treated the motion as one seeking reconsideration. Kennedy does not claim error on that score.

[2] Under section 1292(b), "appellate jurisdiction applies to the *order* certified to the court of appeals, and is not tied to the particular question formulated by the district court." *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996) (emphasis in original). The district court did not specify which order—the March 2015 order dismissing counts or the November 2015 order denying reconsideration—it was certifying. But because the time for appealing the March order had expired, and because the certification was included in the November order, we conclude that the court certified the latter order. *See* FED. R. APP. P. 5(a)(3) ("[T]he district court may amend its order, either on its own or in response to a party's motion, to include the required permission or statement. In that event, the time to petition runs from entry of the amended order.").

the court pointed especially to guidance from the United States Equal Employment Opportunity Commission (EEOC) that the Amendments Act "'would apply to denials of reasonable accommodation where a request was made (*or an earlier request was renewed*) . . . after January 1, 2009.'" *Id.* at 6 (quoting EEOC, Questions and Answers on Final Rule Implementing ADA Amendments Act of 2008, http://www.eeoc.gov/laws/regulations/ada_qa_final_rule.cfm) (emphasis supplied by district court). And in concluding that an interlocutory appeal materially advanced the litigation, the court noted that "an eventual reversal . . . after the parties fully litigate the remaining counts would likely require reopening discovery on the issues of disability and reasonable accommodation, resulting in significant but avoidable costs and delays." *Id.* at 7.

## D. KENNEDY'S ATTEMPT TO PERFECT APPEAL

Section 1292(b) requires the appellant to file an application for permission to appeal with the appellate court within ten days after entry of the order from which the appeal is taken. Under Federal Rule of Appellate Procedure 5, which implements section 1292(b),[3] "[a] notice of appeal need not be filed." FED. R. APP. P. 5(d)(2).

Notwithstanding those provisions, Kennedy filed a notice of appeal in district court on November 18, 2015, two days after the order denying reconsideration. The next day, November 19, the district court transmitted the notice and the order to this Court. Kennedy did not file an application in this

---

[3] Rule 5 "govern[s] all discretionary appeals from district-court orders, judgments, or decrees . . . includ[ing] interlocutory appeals under 28 U.S.C. § 1292(b), (c)(1), (d)(1) & (2)." FED. R. APP. P. 5 advisory committee's note to 1998 amendments.

Court until December 30, 2015, several weeks after the ten-day deadline had passed. In early January 2016, the District filed an opposition asking that the application be denied as untimely. The application was referred to the merits panel.

## II. ANALYSIS

Kennedy argues that we have jurisdiction under section 1292(b).[4] He does not dispute that, because his application to this Court was untimely, it did not itself satisfy the statute or Rule 5. FED. R. APP. P. 5(a)(2) ("The petition must be filed within the time specified by the statute or rule authorizing the appeal . . . ."); *see* FED. R. APP. P. 26(b)(1) ("[T]he court may not extend the time to file . . . a petition for permission to appeal . . . ."). He contends, however, that his notice of appeal and the order denying reconsideration—both of which were transmitted to this Court within the statutory period—are the "functional equivalent" of a timely application. Appellant's Reply Br. 8; *see* Appellant's Br. 4-5. We disagree.

Section 1292(b) provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance

---

[4] Because Kennedy invokes only section 1292(b), we need not consider whether there is any alternative basis for jurisdiction. *See Scenic Am., Inc. v. Dep't of Transp.*, 836 F.3d 42, 53 n.4 (D.C. Cir. 2016) ("Although a party cannot forfeit a claim that we lack jurisdiction, it can forfeit a claim that we possess jurisdiction.").

the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C. § 1292(b).

Rule 5 effectuates and augments the statute. Rule 5(a)(1) provides in part that "a party must file a petition for permission to appeal[,]" which petition "must be filed with the circuit clerk[.]" Rule 5(b)(1) lists the required "[c]ontents of the [p]etition" as follows:

(A) the facts necessary to understand the question presented;

(B) the question itself;

(C) the relief sought;

(D) the reasons why the appeal should be allowed and is authorized by a statute or rule; and

(E) an attached copy of:

(i) the order, decree, or judgment complained of and any related opinion or memorandum, and

> (ii) any order stating the district court's permission to appeal or finding that the necessary conditions are met.

Finally, Rule 5(b)(2) provides that "[a] party may file an answer in opposition or a cross-petition within 10 days after the petition is served."

We have not previously addressed whether a notice of appeal, accompanied by the order certifying an appeal, can satisfy section 1292(b) and Rule 5 if the documents are transmitted to this Court within the statutory period. In *Carr Park, Inc. v. Tesfaye*, 229 F.3d 1192 (D.C. Cir. 2000) (per curiam), we broadly stated that "[f]ailure to file the petition for permission to appeal within the 10-day period provided by the statute deprives us of jurisdiction over the appeal." *Id.* at 1194. No notice of appeal was filed there, *see Tesfaye v. Carr Park, Inc.*, 1:99-cv-02561 (D.D.C.), and we therefore had no occasion to decide the question we confront today.

Our sister circuits have taken divergent approaches to the application requirement. Some have "strictly construed" the requirement. *Milbert v. Bison Labs., Inc.*, 260 F.2d 431, 435 (3d Cir. 1958) (en banc); *see also, e.g.*, *Lynch v. Johns-Manville Sales Corp.*, 701 F.2d 44, 45 (6th Cir. 1983) (per curiam) (requiring "strict compliance"). Other courts are somewhat more flexible. Analogizing to United States Supreme Court precedent interpreting Federal Rule of Appellate Procedure 3, *see Smith v. Barry*, 502 U.S. 244, 247-50 (1992); *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 314-18 (1988), the latter courts have held or at least suggested that they do not require strict compliance if a "functional equivalent" serves as the application, *see, e.g.*, *In re Turner*, 574 F.3d 349, 351-54 (7th Cir. 2009) (Rule 5); *Blausey v. U.S. Tr.*, 552 F.3d 1124, 1130-31 (9th Cir. 2009)

(per curiam) (Rule 5); *Estate of Storm v. Nw. Iowa Hosp. Corp.*, 548 F.3d 686, 687-88 (8th Cir. 2008) (per curiam) (section 1292(b) and Rule 5); *Main Drug, Inc. v. Aetna U.S. Healthcare, Inc.*, 475 F.3d 1228, 1231-32 (11th Cir. 2007) (Rule 5); *Casey v. Long Island R.R. Co.*, 406 F.3d 142, 145-46 (2d Cir. 2005) (section 1292(b) and Rule 5); *Aucoin v. Matador Servs., Inc.*, 749 F.2d 1180, 1181 (5th Cir. 1985) (section 1292(b) and Rule 5).

We need not choose between the competing approaches here. Even under the more flexible approach, the documents the district court transmitted to this Court were not equivalent to an application. *See Torres*, 487 U.S. at 315-16 ("Permitting imperfect but substantial compliance with a technical requirement is not the same as waiving the requirement altogether as a jurisdictional threshold."). The baseline requirement is that the "*party* must file a petition for permission to appeal . . . with the circuit clerk . . . ." FED. R. APP. P. 5(a)(1) (emphasis added). The only thing Kennedy filed within the statutory period was the notice of appeal. Because the notice was not directed to this Court and did not request permission to appeal, it nowise functioned as an application. *See Main Drug*, 475 F.3d at 1232 (notice of appeal and application for permission to appeal "are fundamentally different" in terms of "function"); *Aucoin*, 749 F.2d at 1181 (notice of appeal "misfires in function"); *cf. Casey*, 406 F.3d at 146 (merits brief filed in court of appeals before section 1292(b)'s ten-day deadline was functional equivalent of application).

Nor do we have any business rewriting Rule 5 to permit a would-be appellant to enlist the district court to serve as his proxy by the latter's transmitting the notice of appeal and the order under review as a rough substitute for an application. The district court's order explained why, in *the court's* view,

the case met the statutory criteria for certification. Mem. Op. & Order 9, Dkt. No. 30 (Nov. 16, 2015) (court concluded that Amendments Act issue was "'a controlling question of law as to which there is substantial ground for difference of opinion'" and that "'an immediate appeal . . . may materially advance the ultimate termination of the litigation'") (quoting 28 U.S.C. § 1292(b)) (ellipses supplied by district court). To repeat, however, the Rule requires that a *party* file the petition, FED. R. APP. P. 5(a)(1), which means that the *party* must explain "why the appeal should be allowed and is authorized by a statute or rule[,]" FED. R. APP. P. 5(b)(1)(D). Because the Rule demands the applicant's advocacy, transmission of the district court's views does not suffice. The Supreme Court has all but stated as much. *See Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978) ("[E]ven if the district judge certifies the order under § 1292(b), the appellant still has the burden of persuading the court of appeals that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.") (internal quotation omitted).

Section 1292(b)'s discretionary nature reinforces our conclusion. 28 U.S.C. § 1292(b) (if district court certifies appeal, appellate court "may thereupon, in its discretion, permit an appeal to be taken . . ."). The legislative history compares the appellate court's discretion under section 1292(b) to the Supreme Court's discretion to grant or deny certiorari under 28 U.S.C. § 1254(1). S. Rep. No. 85-2434, at 3 (1958) (appellate court "may refuse to entertain such an appeal in much the same manner that the Supreme Court today refuses to entertain applications for writs of certiorari"). In other words, we "may deny the appeal for any reason, including docket congestion," *Coopers & Lybrand*, 437 U.S. at 475, and we are not limited to the statutory criteria that govern the district court's certification decision, *Katz v. Carte Blanche*

*Corp.*, 496 F.2d 747, 754 (3d Cir. 1974) (en banc). It follows that the district court, in certifying an appeal, may not ordinarily discuss *all* of the considerations bearing on "why the appeal should be allowed[.]" FED. R. APP. P. 5(b)(1)(D). That is the applicant's task, a necessary part of which is persuading us that there is no prudential impediment to our interlocutory review. *See, e.g.*, *Garcia v. Johanns*, 444 F.3d 625, 636-37 (D.C. Cir. 2006) (declining under section 1292(b) to review claim "benefit[ing] from further development in the district court"); 16 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE: JURISDICTION AND RELATED MATTERS § 3929, at 447-52 & nn.51, 54-58 (3d ed. 2012) (citing cases denying or withdrawing permission to appeal for various prudential reasons).

In short, neither the notice of appeal nor the district court's order performed the required adversarial functions. The notice was pro forma. The order (properly) addressed only the statutory criteria with no reference to prudential considerations that might stay our hand until final judgment. Additionally, Kennedy's failure to file a bona fide application within the statutory period deprived the District of an opportunity to respond promptly. Under Rule 5(b)(2), the District was entitled to "file an answer in opposition or a cross-petition within 10 days after the petition [was] served." If Kennedy were right that he effectively petitioned this Court on November 19, 2015—the day the notice and the order were transmitted—the District's answer would have been due on November 30.[5] Yet the District could not have known the clock was ticking because Kennedy had not served an application on it. At oral argument, Kennedy emphasized that the District was able to address jurisdiction throughout the

_____

[5] November 29 was a Sunday so the due date would have been November 30. *See* FED. R. APP. P. 26(a)(1)(C).

pendency of the appeal, including at the merits stage. Oral Arg. Recording 3:53-5:37.[6]  But the point of the ten-day deadlines for both the application and the answer is to ensure a fast and focused process for deciding, *before* merits briefing, whether we review the matter at all.  *Aucoin*, 749 F.2d at 1181 (timely application "permits a near-contemporaneous assessment by the trial and appellate courts of the need for immediate appellate review" and "inform[s] the appellate court in a manner which allows it promptly to respond"); *see also* S. Rep. No. 85-2434, at 3 (application requirement is "protection against delay").  Kennedy's untimeliness thwarted that threshold process.

*\* \* \* \* \**

The notice of appeal and the order transmitted to this Court on November 19, 2015, were not the functional equivalent of an application for permission to appeal and the application that Kennedy filed on December 30, 2015, was untimely under 28 U.S.C. § 1292(b).  Because a timely application is a "condition precedent[]" to appellate jurisdiction, *Milbert*, 260 F.2d at 435; *see Carr Park, Inc.*, 229 F.3d at 1194, we dismiss the appeal.

*So ordered.*

---

[6]  Kennedy also urged us to treat the district court's certification of an appeal as "entry of a final judgment" under Federal Rule of Civil Procedure 54(b), at least as to the eight counts based on the ADA. Oral Arg. Recording 5:37-7:39.  Because he raised that point for the first time at oral argument, we do not consider it.  *United States ex rel. Davis v. District of Columbia*, 793 F.3d 120, 127 (D.C. Cir. 2015) ("Generally, arguments raised for the first time at oral argument are forfeited.").

1

GRIFFITH, *Circuit Judge*, concurring:

I join the court's holding that Kennedy failed to timely file even the functional equivalent of a petition for permission to appeal under 28 U.S.C. § 1292(b) and Federal Rule of Appellate Procedure 5. Before the statutory deadline, all Kennedy did was file a notice of appeal with the district court's clerk. And all this court received—transmitted by the district court's clerk—was that notice, the district court's opinion and order certifying the interlocutory appeal, and the district court's docket sheet. These materials failed to perform two essential functions of a petition for permission to appeal: to actually request permission from this court, and to put the other party on notice of its chance to respond. *See* Slip Op. at 11, 13-14; *see also* FED. R. APP. P. 5(a)(1) ("To request permission to appeal . . . a party must file a petition for permission to appeal."); *id.* (requiring "proof of service on all other parties to the district-court action"); *id.* 5(b)(2) ("A party may file an answer in opposition or a cross-petition within 10 days after the petition is served.").

I write separately to emphasize that our decision is limited to the facts at hand: a filing that fails to perform the most rudimentary functions of a proper petition. Our holding does not resolve whether more conscientious efforts might qualify as functional equivalents of petitions for permission to appeal. For instance, we do not rule out that a filing might pass muster as a functional equivalent if it adopts the district court's reasoning by reference. But Kennedy's filing did not even direct attention to the portion of the district court's opinion discussing § 1292(b). Neither do we hold that a party must anticipate and address the range of prudential considerations that the appellate court might find relevant. But Kennedy failed even to ask this court to permit the appeal. Nor do we hold that a party may never use an agent to

transmit a petition to the circuit court as Kennedy does not argue that he had used the district court's clerk in that way.

One final note. Because of the failure by Kennedy's counsel to petition for permission to appeal, we are barred from addressing a merits issue that the district court thought close and important enough to certify for interlocutory review. If Kennedy still believes that issue warrants resolution, he might seek a new certification order from the district court. Our limited decision today says nothing about whether a second attempt would succeed. *Cf. Marisol v. Giuliani*, 104 F.3d 524, 527-28 (2d Cir. 1997) (describing a circuit split over whether a new certification order restarts the § 1292(b) clock); 28 U.S.C. § 1292(b) (requiring both certification from the district court and permission from the appellate court).