# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**No. 19-3085**

**September Term, 2020**

FILED ON: NOVEMBER 3, 2020

UNITED STATES OF AMERICA,
  APPELLEE

v.

FRANCIS BANKINS,
  APPELLANT

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:18-cr-00213-1)

---

Before: WILKINS and RAO, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

**<u>J U D G M E N T</u>**

This case was considered on the record from the United States District Court for the District of Columbia, and on the briefs and oral arguments of the parties. The Court has afforded the issues full consideration and has determined they do not warrant a published opinion. *See* Fed. R. App. P. 36; D.C. Cir. R. 36(d).

It is **ORDERED and ADJUDGED** that the judgment of the District Court be **AFFIRMED**.

**I.**

On June 11, 2018, Appellant Francis Bankins was arrested during a lawful traffic stop for unlawfully possessing a firearm. During the stop, officers recovered a loaded .357 handgun from Appellant's right jacket pocket. Appellant moved to suppress the evidence seized during the stop, but the District Court denied Appellant's motion after making factual findings and concluding that reasonable articulable suspicion permitted the search. In 2019, after a stipulated trial in the United States District Court for the District of Columbia, Appellant was convicted of unlawful possession of a firearm under 18 U.S.C. § 922(g) and sentenced to 80 months' incarceration and 24 months' supervised release. Appellant filed this appeal challenging the District Court's denial of the motion to suppress.

In denying the motion to suppress, the District Court made the following findings: On June 11, 2018, Metropolitan Police Department Officer Brock Vigil, a police officer with 17 years of experience, assisted other officers in a traffic stop for a window-tint violation. All of the officers on the scene were wearing body-worn cameras ("BWC") that recorded the stop, but the cameras did not capture everything the officers saw. Appellant was seated in the passenger seat of the stopped vehicle. Officer Vigil approached the passenger's side of the car and stood a foot or two back from the passenger-side door. Appellant was wearing a long, dark jacket. The jacket reached Appellant's knees and Appellant had zipped it up. The jacket had large zippered pockets with vertical openings on its sides, and it had a vertical split at the bottom of the back of the jacket.

Officer Vigil observed Appellant interact with another officer, who asked him to step out of the vehicle. After a brief back-and-forth, Appellant stepped out of the vehicle but dropped his identification card. Appellant bent down to pick up his identification card, and when he stood up, the other officer directed him to step back, which Appellant did. The District Court found that the BWC footage showed that Appellant's right pocket appeared to be weighted. The District Court credited Officer Vigil's testimony that Appellant took an unnatural step backwards and inferred that it furthered Officer Vigil's suspicions. As Appellant stepped back, Officer Vigil asked him whether he had a firearm, and Appellant replied that he did not. At this point, Officer Vigil patted Appellant's right jacket pocket down, handcuffed him, and another officer recovered a loaded .357-caliber pistol, a weapon that is heavier than most handguns.

The District Court also found that even though the BWC was partially obstructed for a temporary period, Officer Vigil was able to see Appellant's right jacket pocket because his head was elevated and could turn and tilt, unlike the chest-mounted camera.

On appeal, Appellant argues that the District Court committed clear error in making two factual findings, and he contends that the police did not have reasonable articulable suspicion to justify the search. Specifically, Appellant argues that the BWC footage contradicts the District Court's factual findings that (1) Appellant's right jacket pocket was heavily sagging, and (2) Appellant's unnatural step backwards furthered Officer Vigil's suspicions. However, Appellant concedes that absent a clearly erroneous factual finding by the District Court, reasonable articulable suspicion exists under *Pennsylvania v. Mimms*, 434 U.S. 106, 112 (1977) (per curiam). Oral Arg. Tr. at 17:22–18:17. Because we find that the District Court did not commit clear error, we affirm.

## II.

On review of a motion to suppress, this Court "review[s] legal conclusions de novo and factual findings for clear error." *United States v. Miller*, 799 F.3d 1097, 1101 (D.C. Cir. 2015). In reviewing factual findings, this Court "take[s] care both to review findings of historical fact only for clear error" and "give[s] due weight to inferences drawn from those facts by [district court] judges." *United States v. Delaney*, 955 F.3d 1077, 1082 (D.C. Cir. 2020) (quoting *Ornelas v. United States*, 517 U.S. 690, 699 (1996)). Due weight is not given to an officer's "inchoate and unparticularized suspicion or 'hunch,'" but to the specific reasonable inferences which he is entitled

to draw from the facts in light of his experience." *United States v. Castle*, 825 F.3d 625, 630 (D.C. Cir. 2016) (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)).

We review "*de novo* a district court's 'ultimate determination[]' of whether a police officer had the reasonable, articulable suspicion or probable cause necessary to legally effectuate any such seizure." *Id.* at 632 (quoting *Ornelas*, 517 U.S. at 697, 699). "We will affirm the district court 'so long as any reasonable view of the record supports its denial of the motion to suppress.'" *Miller*, 799 F.3d at 1101 (quoting *United States v. Patrick*, 959 F.2d 991, 997–98 n.8 (D.C. Cir. 1992)).

## III.

Appellant argues that the District Court committed clear error because the BWC footage does not show that his right pocket was sagging. We do not agree. First, although Officer Vigil's view is partially blocked, the BWC footage shows that the pocket drops suddenly when Appellant steps out of the vehicle. Def. Ex. 1 at 3:07–3:08. Second, when Appellant stands up after picking up his identification card, his right pocket drops more suddenly than this left. *Id.* at 3:13–3:14. Moreover, the District Court acknowledged, and Appellant does not dispute, that the body-worn camera did not capture everything that Officer Vigil saw. Therefore, at a minimum, the District Court did not commit clear error in crediting Officer Vigil's testimony that Appellant's right pocket sagged heavily. *See United States v. Broadie*, 452 F.3d 875, 880 (D.C. Cir. 2006) ("We review the district court's credibility determinations only for clear error. Indeed, such rulings 'are entitled to the greatest deference from this court on appeal.'" (citation omitted) (quoting *United States v. Hart*, 324 F.3d 740, 747 (D.C. Cir. 2003)).

Nor did the District Court clearly err in inferring that Appellant's unnatural step backwards raised Officer Vigil's suspicions. Based on Officer Vigil's testimony that Appellant took an "unnatural" and "stiff" backwards step, the District Court inferred that the backwards step further supported Officer Vigil's suspicions. Officer Vigil's testimony made clear that Appellant's backwards step was noteworthy and further drew his attention to Appellant's right pocket. *See* J.A. at 30:4–7 ("As he steps back, I thought it to be a little unnatural, because he comes kind of like in a stiff motion back up towards me. The whole time, I'm watching his pocket with that object."). Indeed, both of the challenged findings are supported by the camera footage showing that Officer Vigil focused first on Appellant's jacket and immediately on his right pocket after making these observations, corroborating his testimony that he was laser-focused on the right pocket as suspicious and potentially containing a weapon.[1] It was therefore not clearly erroneous for the District Court to infer that Officer Vigil believed that Appellant's unnatural backwards step was suspicious.

## IV.

---

[1] During oral argument, Appellant raised for the first time that Officer Vigil patted Appellant's left side before reaching his right pocket, which Appellant argues shows that Officer Vigil was not focused on Appellant's right pocket. "Generally, arguments raised for the first time at oral argument are forfeited." *United States ex rel. Davis v. District of Columbia*, 793 F.3d 120, 127 (D.C. Cir. 2015). Appellant's argument is therefore forfeited.

We also find that reasonable articulable suspicion justified Officer Vigil's search of Appellant. The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. CONST. amend. IV. The Supreme Court has "time and again" made clear that "searches and seizures conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993) (cleaned up). This holds true even when the search and seizure occurs outside a person's home. *See Terry v. Ohio*, 392 U.S. 1, 8–9 (1968).

One of the few exceptions to this prohibition is the *Terry* Stop. A *Terry* Stop permits police officers to conduct "a limited protective search" of a person for a weapon during a lawful on-the-street stop if the officer is able to point to "a reasonable articulable suspicion 'that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others.'" *United States v. Askew*, 529 F.3d 1119, 1126 (D.C. Cir. 2008) (en banc) (quoting *Terry*, 392 U.S. at 24).

Reasonable suspicion "is a less demanding standard than probable cause" and "requires only a minimal level of objective justification." *United States v. Edmonds*, 240 F.3d 55, 59 (D.C. Cir. 2001) (internal quotation marks and citations omitted). This Court "does not separately scrutinize each factor relied upon by the officer conducting the search" and instead evaluates "the totality of the circumstances as the officer on the scene experienced them." *Id.* (citing *United States v. Sokolow*, 490 U.S. 1, 8–9 (1989); *United States v. Clark*, 24 F.3d 299, 301–02 (D.C. Cir. 1994)). The totality of the circumstances must be viewed in light of an "officer's training and experiences," which "enable him to 'draw[] inferences and make[] deductions' from seemingly innocuous facts." *Id.* at 60 (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)). Thus, "even though a single factor might not itself be sufficiently probative of wrongdoing to give rise to a reasonable suspicion, the combination of several factors—especially when viewed through the eyes of an experienced officer—may." *Id.*

Turning to Appellant's challenge, Appellant conceded at argument that *Pennsylvania v. Mimms*, 434 U.S. 106 (1977), controls this case. Oral Arg. Tr. at 17:22–18:17. In *Mimms*, the Supreme Court held that a large bulge consistent with a firearm in a person's jacket was sufficient to establish reasonable suspicion. *Mimms*, 434 U.S. at 111–12. Here, Appellant's heavy, sagging right pocket was enough to permit a reasonable officer to conclude that Appellant was armed. As discussed above, the District Court reviewed the BWC footage and found that the right side of Appellant's jacket appeared to be heavier than the left. Moreover, in the suppression hearing, Officer Vigil repeatedly described the jacket pocket as containing a "heavy object" that he believed to be a firearm, J.A. 29:18–21; J.A. 33:9–11, and he explained that the right pocket "drop[ped] down, heavy to that side," J.A. 39:3–5, and the District Court credited this portion of Officer Vigil's testimony. Accordingly, we find that reasonable articulable suspicion existed and warranted the search of Appellant's right jacket pocket.

Consistent with the foregoing, we affirm the judgment of the district court. Pursuant to D.C.

Circuit Rule 36, this disposition will not be published.  The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing *en banc*. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41.

## Per Curiam

FOR THE COURT:
Mark J. Langer, Clerk

BY:     /s/
Daniel J. Reidy
Deputy Clerk