# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued February 24, 2014         Decided July 1, 2014

No. 13-7022

NORMAN WILLIAMS AND DIANE HOWE, AS LEGAL
REPRESENTATIVE OF J.H.,
APPELLANTS

v.

ROMARM, SA AND DOES COMPANY DISTRIBUTORS,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:12-cv-00436)

*Daniel M. Wemhoff* argued the cause and filed the briefs for appellants.

*Anthony M. Pisciotti* argued the cause for appellees. With him on the brief were *Jeffrey M. Malsch* and *James W. Porter III*.

Before: BROWN, *Circuit Judge*, and EDWARDS and SILBERMAN, *Senior Circuit Judges*.

Opinion for the court filed by *Circuit Judge* BROWN.

2

BROWN, *Circuit Judge*: The choppy waters of the Supreme Court's "stream of commerce" doctrine have plagued lower courts for years. The three competing opinions in *Asahi Metal Industry Co., Ltd.*, *v. Superior Court of California*, 480 U.S. 102 (1987), each offered conflicting standards for exercising personal jurisdiction over a foreign manufacturer in a suit alleging injuries caused by its products in the forum state. Thankfully, we need not plumb those currents today because the Supreme Court recently clarified the minimum requirements applicable to the facts of this case.

In *J. McIntyre Machinery*, *Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011), Justice Breyer's narrow concurrence addressed the precise issue we face today and concluded a foreign corporation's sale to a distributor, without more, is insufficient to establish the minimum contacts necessary for a court to exert personal jurisdiction over the corporation, even if its product ultimately causes injury in the forum state. *Nicastro* compels us to affirm.

I

In March 2010, J.H., the son of Appellants Norman Williams and Diane Howe, was tragically murdered in a drive-by shooting in the District of Columbia. Investigation revealed the assault rifle used in the attack was manufactured by Appellee National Company Romarm S.A. ("Romarm"). Romarm is a foreign corporation and firearms manufacturer owned by the Romanian government and located in Bucharest, Romania. Romarm sells its products in Romania to an American distributor that imports them into the United States for sale. Assault weapons, like the one used to kill J.H., are prohibited in the District of Columbia. D.C. CODE § 7-2502.02(a)(6).

Two years after the shooting, Appellants filed a wrongful death action on behalf of J.H in the United States District Court for the District of Columbia. The complaint asserted claims under the District of Columbia's Wrongful Death Statute, Survival Act, and Assault Weapons Manufacturing Strict Liability Act, in addition to common law claims based on negligence and public nuisance. Appellants argued the court had personal jurisdiction over Romarm through the District of Columbia's long-arm statute and subject matter jurisdiction through diversity of citizenship. Appellants also alleged subject-matter jurisdiction was not divested through the Foreign Sovereign Immunity Act, because of the "commercial activity" exception.

Romarm subsequently moved to dismiss Appellants' complaint under Federal Rules of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction, 12(b)(2) for lack of personal jurisdiction, and 12(b)(6) for failure to state a claim. Appellants then filed a motion for extension of time to respond, which the district court interpreted as a request for jurisdictional discovery. In February 2013, the district court denied Appellants' discovery request and granted Romarm's motion to dismiss, finding Appellants "failed to allege personal jurisdiction over ROMARM."[1] *Williams v. Romarm*, No. 1:12-cv-00436, slip op. at 17 (D.D.C. Feb. 4, 2013), ECF No. 23.

---

[1] The district court chose to address personal jurisdiction before deciding whether it had subject-matter jurisdiction to hear the case. J.A. 42. This approach is permitted, s*ee Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999) ("[T]here is no unyielding jurisdictional hierarchy."), and Appellants do not challenge it.

4

II

Appellants have raised three primary challenges to the district court's ruling: (A) Romarm is not a "person" entitled to due process but is instead an agent of a foreign state; (B) Romarm's sales to the United States through a distributor establish sufficient contact with the District to comply with due process; and (C) the district court abused its discretion in rejecting Appellants' proposed limited jurisdictional discovery requests. We reject each challenge and affirm the district court.

A

First, like the district court, we must decide whether the Due Process Clause applies to Romarm. If so, Appellants would have to establish both statutory *and* constitutional personal jurisdiction. The answer to this preliminary question depends, in part, on how completely the Romanian government controls the corporate entity—i.e., is the corporation an inseparable part of the foreign state?

Under the Foreign Sovereign Immunities Act, "[p]ersonal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have [subject matter] jurisdiction . . . [and] where service has been made." 28 U.S.C. § 1330(b). "In other words, under the [Act], subject matter jurisdiction plus service of process equals personal jurisdiction." *GSS Grp. Ltd. v. Nat'l Port Auth.*, 680 F.3d 805, 811 (D.C. Cir. 2012) (citing *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 95 (D.C. Cir. 2002)). And because a foreign state is not a "person" protected by the Due Process Clause of the Fifth Amendment, minimum contacts between the foreign state and the forum state are not required for a court to constitutionally exert personal

jurisdiction over the state. *See GSS Grp. Ltd.*, 680 F.3d at 813 (citing *Price*, 294 F.3d at 96). The Act itself defines "foreign state" expansively to include any corporation that "is an organ of a foreign state . . . or a majority of whose shares or other ownership interest is owned by a foreign state." 28 U.S.C. § 1603(b)(2). Despite this broad statutory definition, however, constitutional protection will be accorded if a corporation "does not act as an agent of the state, and separate treatment would not result in manifest injustice[; if so, it] will enjoy all the due process protections available to private corporations," which includes challenging the exercise of personal jurisdiction for insufficient minimum contacts. *GSS Grp. Ltd.*, 680 F.3d at 815 (internal citations omitted); *see also id.* at 813, 817. Only when the foreign sovereign exercises control over the corporation to such a degree as to create a principal–agent relationship is the corporation considered part of the foreign state, rather than a "person" entitled to constitutional due process protection. *Id.* at 815.

The district court found that Romarm "consistently" represented itself as a separate entity from the Romanian State, despite its state ownership, and it rejected Appellants' arguments to the contrary. *Williams v. Romarm*, No. 1:12-cv-00436, slip op. at 11 (D.D.C. Feb. 4, 2013), ECF No. 23. Thereafter, the district court proceeded to the due process minimum contacts analysis, and ultimately concluded the alleged contacts were insufficient to justify jurisdiction.

At oral argument, Appellants primarily challenged the district court's conclusion that Romarm is juridically independent from Romania and thus entitled to due process. Specifically, Appellants pointed to a claimed "concession" by Romarm that it is both owned *and operated* by Romania. This concession, they say, establishes Romarm as a state entity that is not entitled to due process.

However weighty this argument may be, we decline to consider it because Appellants failed to raise it in their briefs. Nowhere in their filings do Appellants cite to the document containing the alleged "concession" by Romarm on which they so heavily relied at oral argument. Nor do they ever explain (or argue in their briefs) the import of such a concession on personal jurisdiction. The majority of the opening brief argues Romarm's minimum contacts support personal jurisdiction. No attempt is made to couch the minimum contacts analysis as an alternative argument to the primary contention that due process never applied. In fact, Appellants' opening brief is actually inconsistent with their new argument, asserting "in its role as a 'private actor,' Romarm is granted due process guarantees . . . necessary for the district court to assert personal jurisdiction." Appellants' Br. at 5–6; *see also id.* at 13–14 ("Personal jurisdiction must satisfy: (1) District of Columbia's long-arm statute, and (2) the Due Process Clause."). As Appellants conceded at oral argument, their new argument renders the "vast majority of the briefs . . . irrelevant," including their own. Oral Arg. Tape, No. 13-7022, at 14:08–14:20 (Feb. 24, 2014).

When we asked Appellants why this argument was not raised in the briefs, Appellants claimed they "discovered" Romarm's concession after the briefing deadline. Oral Arg. Tape, at 15:30–15:56. But this answer amounts to little, since the "discovered" concession is contained in the district court record that was always available to the parties. Additionally, the district court made a clear ruling on the due process issue, so Appellants easily could have challenged that issue in their briefs.

Whether it was an intentional strategy or a simple case of overlooking the record, Appellants cannot "sandbag" Romarm. *See Sitka Sound Seafoods, Inc. v. NLRB*, 206 F.3d

1175, 1181 (D.C. Cir. 2000). Questions not presented and argued by the parties in a sequence affording appropriate consideration are forfeited, and we accordingly decline to rule on the issue since it was not properly raised. *See, e.g.*, *Ark. Las Vegas Rest. Corp. v. NLRB*, 334 F.3d 99, 108 n.4 (D.C. Cir. 2003); *Parsipanny Hotel Mgmt. Co. v. NLRB*, 99 F.3d 413, 418–19 (D.C. Cir. 1996); *C.J. Krehbiel Co. v. NLRB*, 844 F.2d 880, 883 n.1 (D.C. Cir. 1988); *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983); *see also* FED. R. APP. P. 28(a)(8)(A).[2]

B

Because we must assume, for the purposes of this appeal, the Due Process Clause applies to Romarm, we now address

---

[2] Appellants conceivably made a fleeting reference to the issue in their reply brief, where they cite the Act's provision regarding personal jurisdiction. *See* Reply Br. at 2. However, Appellants discuss the statute in response to Romarm's case summary of the Appellants' lower-court arguments, so it is not clear Appellants are making any new argument with respect to it. *Cf. Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1001 (D.C. Cir. 2008) (holding that merely discussing the factual basis for an argument is insufficient to raise the claim). In fact, Appellants refer to the Act as granting "statutory jurisdiction" and go on to say "due process is invoked as if [Romarm were] a private actor." Reply Br. at 2. Appellants' point is unclear, and one must view the brief rather broadly with a generous eye to spy its relation to their contentions at oral arguments. Further, mere reference to an issue does not present it properly for review. *See Am. Wildlands*, 530 F.3d at 1001; *Sitka Sound Seafoods*, 206 F.3d at 1181. Nor would it have been proper for Appellants to wait until their reply brief to make the argument. *See Am. Wildlands*, 530 F.3d at 1001; *Sitka Sound Seafoods*, 206 F.3d at 1181.

whether the district court could properly exercise jurisdiction over Romarm in accordance with due process.

This court reviews dismissals for lack of personal jurisdiction de novo. *GSS Grp. Ltd.*, 680 F.3d at 810–11. Appellants' claims against Romarm concern "specific" jurisdiction, or jurisdiction that arises out of or in relation to the defendant's contacts with the forum. *Nicastro*, 131 S. Ct. at 2788.[3] Because subject matter jurisdiction in this case is based on diversity of citizenship, the forum "state" is that in which the federal court sits—here, the District of Columbia. *See, e.g.*, *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 455–56 (D.C. Cir. 1990).

For a court to assert personal jurisdiction over a nonresident defendant, including a corporation, the defendant must "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The "defendant's conduct and connection with the forum State" must be "such that [it] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). For example, when a "corporation

---

[3] In contrast, "general" jurisdiction gives the court jurisdiction over the defendant to resolve both matters that originate within the forum state and those based on activities and events elsewhere. The Appellants wisely have never asserted general jurisdiction against Romarm. To do so, they would have had to establish explicit consent, presence within the forum at the time suit commences through service of process, citizenship or domicile, or other examples where the circumstances or Romarm's course of conduct revealed "an intention to benefit from" and thus "submit to the laws of the forum State." *See Nicastro*, 131 S. Ct. at 2787 (plurality opinion).

purposefully avails itself of the privilege of conducting activities within the forum State, it has clear notice . . . it is subject to suit there." *Id.* (internal citation and quotation marks omitted).

Personal jurisdiction can also be premised on a defendant's participation in the "stream of commerce," which "refers to the movement of goods from manufacturers through distributors to consumers." *Nicastro*, 131 S. Ct. at 2788 (plurality opinion). However, "beyond that descriptive purpose its meaning is far from exact." *Id.* The Court's seminal stream-of-commerce case *Asahi Metal Industry*, for example, resulted in three competing interpretations, none of which garnered a majority. *See* 480 U.S. 102.

In *Asahi*, Justice Brennan, joined by three justices, would have found personal jurisdiction under a stream-of-commerce theory "[a]s long as a participant . . . is aware that the final product is being marketed in the forum state." 480 U.S. at 116–17 (Brennan, J., concurring in part and concurring in the judgment). In other words, when a manufacturer places its product into the stream of commerce, it should expect to be brought into court wherever its products land in the regular course of business. In contrast, Justice O'Connor, also joined by three members of the Court, posited the "placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Id.* at 112 (plurality opinion). Rather, she would have required some "[a]dditional conduct of the defendant [indicating] an intent or purpose to serve the market in the forum State." *Id.* Simple awareness is not enough. *Id.* Finally, Justice Stevens, joined by two justices, found "the volume, the value, and the hazardous character" of the product affects the "purposeful availment" determination. *Id.* at 122 (Stevens, J., concurring in part and concurring in the

judgment).  Since *Asahi* issued in 1987, "courts have sought to reconcile the competing opinions."  *Nicastro*, 131 S. Ct. at 2789 (plurality opinion).

We take no position here on which *Asahi* theory should prevail.  Rather, we rely on Justice Breyer's concurrence in *Nicastro* that certain facts, without more, are insufficient for personal jurisdiction.  131 S. Ct. at 2792; *see Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgment on the narrowest grounds."); *King v. Palmer*, 950 F.2d 771, 781 (D.C. Cir. 1991) (en banc) ("[O]ne opinion can be meaningfully regarded as 'narrower' than another . . . only when one opinion is a logical subset of other, broader opinions.").  Specifically, six justices agreed the forum state could not constitutionally assert personal jurisdiction over the foreign manufacturer based on the following facts:  the distributor's single sale to a customer in the forum state; the manufacturer's desire that the distributor pursue customers throughout the United States; and the manufacturer's business-related contacts with various states other than the forum state.  *Nicastro*, 131 S. Ct. at 2790 (plurality opinion); *id.* at 2791 (Breyer, J., concurring in the judgment).

As Justice Breyer points out, such a "single isolated sale" from a distributor to a customer in the forum state has never been sufficient to establish minimum contacts between the manufacturer and the forum, under any stream-of-commerce interpretation.  *See Nicastro*, 131 S. Ct. at 2792 (Breyer, J., concurring).  Thus, at a minimum, a plaintiff trying to establish personal jurisdiction over a foreign corporation must show a "regular flow or regular course of sales" in the forum

state, or some additional efforts directed toward the forum state, such as "special state-related design, advertising, advice, [or] marketing." *Id.*[4]

Appellants have the burden of establishing a factual basis for the court's exercise of personal jurisdiction over Romarm. *See Crane*, 894 F.2d at 456. Appellants argue their burden is met here because they alleged Romarm sold its products to an American distributor, fully aware the distributor would sell these products in the United States. Additionally, they insist Romarm should have been aware criminals would traffic the weapons into the District of Columbia, even though the District prohibits assault rifles. To illustrate this contention, Appellants point to police records showing that forty-one weapons manufactured by Romarm were recovered within the District during a four-year-period. Thus, Appellants argue it was "highly foreseeable, if not probable, that [Romarm's] products [would], by [their] attractive nature to criminals and others, crossover into forums, such as the District of Columbia, where they are prohibited." Appellants' Br. at 7.

*Nicastro* makes clear that a manufacturer's broad desire to target the United States through a distributor will not suffice. *See* 131 S. Ct. at 2791–92 (Breyer, J., concurring in the judgment); *see also id.* at 2790 (plurality opinion) ("These facts may reveal an intent to serve the U.S. market, but they do not show that J. McIntyre purposefully availed itself of the New Jersey market."). Rather, Appellants must allege

---

[4] We do not take a position on whether a plaintiff can establish personal jurisdiction *solely* by showing a "regular flow of sales" to the forum state, without more. We simply note the absence of such sales, combined with the absence of additional efforts, will be fatal to a plaintiff's claim.

conduct specific to the forum in some way. Yet the only District-specific information Appellants proffer is that *some* Romarm-manufactured weapons have ended up in the District through criminal trafficking. Here, we do not even have the isolated *sale* that *Nicastro* found insufficient. Instead, Appellants rely solely on the "mere unilateral" (and criminal) activity of others—activity that takes place after the standard chain of distribution is complete; this cannot satisfy due process. *See World-Wide Volkswagen Corp.*, 444 U.S. at 298; *see also Nicastro*, 131 S. Ct. at 2792 (Breyer, J., concurring in the judgment). Even under the broadest stream-of-commerce theory, stream of commerce cannot mean "unpredictable currents or eddies." *Asahi*, 480 U.S. at 117 (Brennan, J., concurring in part and concurring in the judgment); *see also Nicastro*, 131 S. Ct. at 2792 (Breyer, J., concurring in the judgment). Absent facts showing Romarm targeted the District or its customers in some way—which do not exist in the record—due process will not permit the district court to exercise its jurisdiction over Romarm.[5]

## C

Appellants claim they were stymied in their attempt to show personal jurisdiction because the district court did not permit limited discovery. We find no error.

We review a district court's denial of jurisdictional discovery for abuse of discretion. *FC Inv. Grp. LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1091 (D.C. Cir. 2008). A plaintiff "must have at least a good faith belief that such discovery will enable it to show that the court has personal

---

[5] Appellants contend numerous cases support personal jurisdiction here. We reject these arguments as superseded by *Nicastro*.

jurisdiction over the defendant." *Id.* at 1093–94. "[M]ere conjecture or speculation" is not enough. *Id.* at 1094.

The district court found Appellants' requests did not relate to any specific connections between Romarm and the District of Columbia and were instead requests for "general and far-reaching discovery regarding Romarm's business activities as a whole." *Williams v. Romarm*, No. 1:12-cv-00436, slip op. at 20 (D.D.C. Feb. 4, 2013), ECF No. 23. Appellants claim the "obvious aim of such discovery is to determine, exactly what the volume of weapons sold by Romarm [is] in the *US market*." Appellants' Br. at 13 (emphasis added). Which is precisely the problem. Such broad-ranging questions lack specificity to the District, or even the broader metro area; and information about the U.S. market as a whole will be insufficient, no matter the answers to the questions.

Additionally, even if Appellants learned about Romarm's knowledge of any thefts and its anti-theft precautions (if any), our jurisdictional analysis is unlikely to change. "[E]ven if [a] defendant places his goods in the stream of commerce, fully aware (and hoping) that . . . a sale will take place" in the forum, such an isolated sale will not constitute an adequate basis for personal jurisdiction. *See Nicastro*, 131 S. Ct. at 2792 (Breyer, J., concurring in the judgment). The requested discovery could not enable the Appellants to account for the tenuous connection between Romarm's sale to its distributor and the sporadic, unilateral movement of its products into the District by unrelated third persons. The district court did not abuse its discretion. *See Mwani v. bin Laden*, 417 F.3d 1, 17 (D.C. Cir. 2005) (noting when this court does "not see what facts additional discovery could produce that would affect our jurisdictional analysis, [it] must conclude the district court did not abuse its discretion in dismissing the action when it did"); *cf. Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 513

(D.C. Cir. 2002) (noting jurisdictional discovery should have been granted because plaintiff demonstrated it *could* "supplement its jurisdictional allegations through discovery"). We will not reverse the district court in order to permit an unwarranted fishing expedition about the general way Romarm conducts its business, to support a broad-ranging theory on Romarm's culpability in not preventing thefts. *See FC Inv. Grp. LC*, 529 F.3d at 1094 (finding no abuse of discretion in disallowing discovery based on a theory of "commuter jurisdiction").

## D

We are left with one last matter to address. After oral argument, both parties submitted an extensive series of dueling 28(j) letters and motions. Because the subject matter of these letters relates to the previously unbriefed foreign entity issue we decline to address today, the correspondence is not relevant to our decision. The motions relating to this issue are moot. We think it is worth noting the 28(j) process should not be employed as a second opportunity to brief an issue not raised in the initial briefs. The letters are more appropriately used to cite new authorities released after briefing is complete or after argument but before issuance of the court's opinion. All post-argument requests and motions are denied.

## III

Appellants have failed to allege any conduct by Romarm that was purposely directed toward the District of Columbia. Nor could their discovery requests supply the missing element. The district court appropriately dismissed the case for lack of personal jurisdiction over Romarm.

15

For the foregoing reasons, the judgment of the district court is

*Affirmed.*