# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| Eduardo Diaz Cardona and<br>Wendy Cardona, | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No.: N15C-09-210 SKR |
| | ) | |
| v. | ) | |
| | ) | |
| Hitachi Koki Co., Ltd., | ) | |
| Hitachi Koki U.S.A., Ltd., and | ) | |
| Schell Brothers, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: December 29, 2018
Decided: February 5, 2019

*Upon Defendant Hitachi Koki Co., Ltd.'s Motion to Dismiss for Lack of Personal Jurisdiction*: **DENIED**.

David A. Boswell, Hudson, Jones, Jaywork & Fisher, LLC, Brian D. Kent (*pro hac vice*) (*argued*), Samuel I. Reich (*pro hac vice*), Laffey, Bucci & Kent, LLP, Attorneys for Plaintiffs.

Thomas J. Gerard, Bradley D. Remick (*pro hac vice*) (*argued*), Marshall Dennehey Warner Coleman & Goggin, Attorneys for Defendant Hitachi Koki Co., Ltd.

Kenneth M. Doss, Casarino Christman Shalk Ransom & Doss, P.A., Attorney for Defendant Schell Brothers, LLC.

**Rennie, J.**

# OPINION

This case arises out of a September 26, 2013 injury. Plaintiff Eduardo Diaz Cardona ("Plaintiff") was using a Hitachi NV83A3 contact trip nail gun in connection with his job responsibilities at a construction site in Sussex County, when the nail gun allegedly malfunctioned and ejected a nail directly into Plaintiff's eye, causing serious and permanent injuries. Plaintiff brought this action against the manufacturer and the distributor of the nail gun, and the general contractor of the construction site, alleging various counts of wrongdoing. Now before the Court is the manufacturer's Motion to Dismiss for Lack of Personal Jurisdiction.

## I. FACTS[1] AND PROCEDURAL BACKGROUND

Defendant Hitachi Koki Co., Ltd. ("HKK"), the designer and manufacturer of the NV83A3 nail guns, is a Japanese corporation and has its principal place of business in Tokyo, Japan. HKK designs the NV83A3 nail guns in Japan and manufactures them in Taiwan. HKK inspects and tests the nail guns for operational safety, and also creates the safety manual, warning instructions, and labels that are to be provided with the nail guns.

Defendant Hitachi Koki U.S.A., Ltd. ("HKU") is a Delaware corporation with its principal place of business in Georgia. HKU is a wholly-owned subsidiary of

---

[1] The facts recited herein are drawn largely from the Special Master's July 26, 2018 Report and Recommendations.

2

HKK, and was created to sell power tools manufactured by HKK, including the NV83A3 nail guns, in the U.S. market. HKK and HKU have two board directors in common. HKK is the guarantor on HKU's Georgia bank accounts and the property leased for HKU's facility in Georgia.

HKU is the exclusive U.S. distributor of HKK products. HKU ultimately decides where a HKK product is sold and what product is sold, but HKK is fully aware of HKU's major customers. The Hitachi Koki Group, of which HKK is a part, in a 2016 financial report, stated that it "expanded transactions with a major home center chain, with which it had strengthened its alliance. . . ." The "major home center chain" refers to Lowe's, which sells the NV83A3 nail guns. HKK power tool products are also sold to the general public through the website http://www.hitachipowertools.com/.

Plaintiff is a Maryland resident who was employed by MDI Contractors, LLC ("MDI") of Georgetown, Delaware, which was one of the subcontractors assigned to perform construction work at the "Osprey Landing" project in Sussex County, Delaware. On September 26, 2013, while working at Osprey Landing, Plaintiff used a Hitachi NV83A3 nail gun, and the nail gun allegedly malfunctioned, ejected a nail directly into Plaintiff's eye, and caused him permanent injuries. The nail gun at issue

3

was supplied to Plaintiff by MDI, but there is no direct evidence in the record showing where or by whom it was purchased.[2]

On September 24, 2015, Plaintiff filed this action against HKK, HKU, and Osprey Landing's general contractor, Schell Brothers, LLC.[3] The claims against HKK and HKU include negligence, breach of express and implied warranties, and breach of various consumer protection statutes. HKK moved to dismiss the case for lack of personal jurisdiction under Superior Court Civil Rule 12(b)(2).[4] The Court denied HKK's motion without prejudice, and allowed the parties to conduct jurisdictional discovery.[5] After the jurisdictional discovery was completed, HKK filed a Renewed Motion to Dismiss.[6] On September 28, 2017, the Court appointed a Special Master to rule on HKK's Renewed Motion to Dismiss and some related discovery issues. On July 26, 2018, the Special Master issued his Report and Recommendations, finding that the Court has personal jurisdiction over HKK. Both parties filed Exceptions to the Report. On December 21, 2018, with leave of the

---

[2] The Special Master found that the nail gun was purchased by MDI in Delaware. Special Master's Report and Recommendations at 26 (Trans. ID. 62278669). HKK disputed this fact. HKK's Exceptions to Special Master's Report and Recommendations at 3 (Trans. ID. 62291209). In response, Plaintiff merely stated that the presumption that the nail gun was purchased in Delaware "would be correct based on the circumstantial evidence." Plaintiff's Response to HKK's Exceptions at 6–7 (Trans. ID. 62347498).

[3] Complaint (Trans. ID. 57917647).

[4] HKK's Motion to Dismiss (Trans. ID. 58494979).

[5] March 17, 2016 Order (Trans. ID. 58734971).

[6] HKK's Renewed Motion to Dismiss (Trans. ID. 60839030).

4

Court, HKK filed a supplemental brief in support of its Exceptions,[7] to which Plaintiff responded on December 29, 2018.[8] After consideration of the Special Master's Report, the parties' Exceptions and Responses thereto, decisional law, and the entire record in this case, the Court now **DENIES** HKK's Renewed Motion to Dismiss for Lack of Personal Jurisdiction.

## II. STANDARD OF REVIEW

Superior Court Civil Rule 122 provides that a Special Master's report is subject to *de novo* review by the Court.[9]

In considering a motion to dismiss under Superior Court Civil Rule 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden to prove a non-frivolous basis for the Court's assertion of jurisdiction.[10] The plaintiff satisfies this burden by "making a *prima facie* showing that jurisdiction is conferred by statute."[11] The facts are interpreted in a light most favorable to the plaintiff.[12]

---

[7] HKK's Supplemental Brief in Support of Exceptions to Special Master's Report (Trans. ID. 62795555).

[8] HKK submitted an Order from the Court of Common Pleas of Philadelphia County, where in a purportedly similar case, the Court granted dismissal of HKK for lack of personal jurisdiction. However, the Order from the Philadelphia Court is only a 1-page document stating that HKK was dismissed from that case. There are no facts or legal analysis that this Court can take into consideration. Therefore, the Court will not consider the Philadelphia Order in rendering a decision on HKK's Motion.

[9] Super. Ct. Civ. R. 122(c).

[10] *Mabey v. Crystalite Bohemia, S.R.O.*, 2018 WL 775402, at *3 (Del. Super. Feb. 6, 2018) (internal citations omitted).

[11] *Id.* (internal citation omitted).

[12] *Id.* (internal citation omitted).

## III. LEGAL ANALYSIS

In determining the issue of personal jurisdiction over a nonresident, Delaware courts apply a two-step analysis. First, the Court must determine whether jurisdiction is appropriate under Delaware's long-arm statute. Additionally, the Court evaluates whether asserting jurisdiction would comport with the Due Process Clause of the United States Constitution.[13] These two tests are independent.[14]

### A. Long-Arm Statute

Delaware's long-arm statute, 10 *Del. C.* §3104(c), allows the Court to exercise jurisdiction over a nonresident defendant when that person:

> (1) Transacts any business or performs any character of work or service in the State;
> (2) Contracts to supply services or things in this State;
> (3) Causes tortious injury in the State by an act or omission in this State;
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State; . . . .[15]

---

[13] *Wright v. Am. Home Prods. Corp.*, 768 A.2d 518, 527 (Del. Super. 2000) (internal citation omitted).

[14] *Id.* (internal citation omitted).

[15] Section 3104(c) enumerates six categories of acts that will submit a nonresident defendant to a Delaware court's jurisdiction. Plaintiff's assertion of jurisdiction is based solely on § 3104(c)(1) and (c)(4).

Delaware's long-arm statute is broadly construed to confer jurisdiction "to the maximum extent possible under the Due Process Clause."[16] In line with modern *in personam* jurisdiction ideologies,[17] §3104(c) has been divided into two categories: general and specific jurisdiction.[18] Sections 3104(c)(1)–(3) have been deemed to be specific jurisdiction provisions.[19] Specific jurisdiction is at issue only when a plaintiff's claims arise out of or relates to the defendant's contacts with Delaware.[20] Section 3104(c)(4), on the other hand, is deemed to confer general jurisdiction.[21] General jurisdiction does not require that the plaintiff's claims relate to the defendant's contacts with the forum, but the defendant's affiliations with the forum must be "so continuous and systematic as to render it essentially at home" in the forum state.[22]

In applying the provisions of the Delaware long-arm statute, Delaware courts have developed a concept known as "dual jurisdiction," which arises from a combination of §3104(c)(1) and (c)(4). This term was first referenced by the Delaware Supreme Court in *LaNuova D & B, S.p.A. v. Bowe Co.*, in *dictum*:

---

[16] *Hercules, Inc. v. Leu Tr. & Banking (Bahamas) Ltd.*, 611 A.2d 476, 480 (Del. 1992) (internal citations omitted).

[17] *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (differentiating between general or all-purpose jurisdiction, and specific or case-linked jurisdiction).

[18] *Hedger v. Medline Indus., Inc.*, 2017 WL 396770, at *3 (Del. Super. Jan. 27, 2017) (internal citation omitted).

[19] *Id.* (internal citations omitted).

[20] *Id.* (internal citations omitted).

[21] *Id.* (internal citations omitted).

[22] *Id.* (internal citations omitted).

7

It is conceivable that a tort claim could enjoy a <u>dual jurisdiction</u> basis under (c)(1) and (c)(4) if the indicia of activity set forth under (c)(4) were sufficiently extensive to reach the transactional level of (c)(1) and there was a nexus between the tort claim and transaction of business or performance of work.[23]

The "dual jurisdiction" concept was thereafter adopted and applied by the Delaware Superior Court in *Boone v. Oy Partek Ab*,[24] as a basis to confer jurisdiction over a foreign manufacturer where its contact with Delaware stems from an allegedly defective product that was introduced into and caused tortious injury in Delaware.[25]

In *Boone*, a Finland-based asbestos company, Partek, contracted with a New York firm, Huxley, giving Huxley the exclusive right to sell Partek's asbestos in the U.S.[26] Huxley purchased asbestos from Partek, already bagged and labeled, F.O.B. Helsinki.[27] Huxley was responsible for finding customers for Partek's asbestos and any inquiries made to Partek from the U.S. buyers were turned over to Huxley.[28] The Court found that, although none of the 3104(c) provisions applied in that case, jurisdiction over Partek was still appropriate under the "dual jurisdiction" doctrine.

---

[23] *LaNuova D & B S.p.A. v. Bowe Co.*, 513 A.2d 764, 768 n.3 (Del. 1986) (*emphasis added*).

[24] *Boone v. Oy Partek Ab*, 724 A.2d 1150 (Del. Super. 1997).

[25] HKK argues that *Boone* is no longer good law in light of recent U.S. Supreme Court cases. HKK does not specify in which regard, long-arm statute or Due Process, *Boone* is not good law. The Delaware Supreme Court has not had occasion to revisit or clarify the "dual jurisdiction" concept since *LaNuova*. At least for long-arm statute purposes, *Boone* has never been rejected by the Delaware Supreme Court and has been consistently applied and cited by subsequent Delaware Superior Court cases.

[26] *Boone*, at 1153.

[27] *Id.*

[28] *Id.*

To support its finding of jurisdiction, the Court focused on the goal of the long-arm statute, i.e., providing a means of redress to recover from nonresident defendants.[29] The Court also adopted the "stream of commerce" theory,[30] which is typically applied as part of the Due Process analysis to jurisdiction, and found that this theory can independently satisfy the first step of the jurisdictional analysis and confer jurisdiction under §3104.[31] While acknowledging that the "stream of commerce" theory does not fit neatly into any of the 3104(c) categories, the Court in *Boone* found that *LaNuova*'s creation of the "dual jurisdiction" concept presented a fitting solution to encompass the intricacies of the "stream of commerce" theory and included it as part of the analysis of the Delaware long-arm statute.[32]

---

[29] *Id.* at 1156.

[30] The "stream of commerce" theory will be discussed in detail in the next section in connection with the Due Process analysis.

[31] *Boone*, at 1157.

[32] *Id.* The Court's analysis in *Boone*, however, is not without criticism. First, by borrowing and injecting the constitutional "stream of commerce" concept into the analysis of the long-arm statute, the *Boone* decision has been criticized for violating the principle that the long-arm statute should be separately analyzed from the Due Process consideration. *Round Rock Research LLC v. ASUSTek Comput. Inc.*, 967 F.Supp.2d 969, 976 (D.Del 2013). Moreover, the determination that *LaNuova*'s "dual jurisdiction" footnote endorsed the inclusion of "stream of commerce" into the long-arm statute has been criticized as being overreaching. *Id.* ("[A] reasonable interpretation of this footnote would be that the [Delaware] Supreme Court was doing nothing more than stating the obvious, that is, that the (c)(1) and (c)(4) subsections involve overlapping concepts, and there thus might be times when the set of facts that establishes general jurisdiction under (c)(4) also establishes specific jurisdiction under (c)(1), and thus the jurisdiction would be 'dual.'"). While an argument can be made that the "dual jurisdiction" doctrine created by *Boone* is beyond the scope of the Delaware long-arm statute, it is not for that reason alone invalid. In fact, subsequent to *Boone*, the "dual jurisdiction" doctrine has been continually applied by this Court and the District Court for the District of Delaware in determining the issue of personal jurisdiction involving foreign manufacturers. *See Mabey v. Crystalite Bohemia, S.R.O.*, 2018 WL 775402 (Del. Super. Feb. 6, 2018); *Hedger v. Medline Indus., Inc.*, 2017 WL 396770 (Del. Super. Jan. 27, 2017); *Crane v. Home Depot, Inc.*, 2008 WL 2231472 (Del. Super. May 30, 2008); *Wright v. Am.*

Further, the Court in *Boone* held that, to satisfy "dual jurisdiction", § 3104(c)(1) and (c)(4) should not be "overemphasize[d]," as it is not important that "the indicia of activity under § 3104(c)(4) rise to a level of 'general presence'" or that the defendant manufacturer itself acts in Delaware.[33] Rather, the Court held that "dual jurisdiction" exists as long as (1) the defendant manufacturer demonstrates "an intent or purpose to serve the Delaware market with its product," and (2) that intent or purpose results in the introduction of the product into Delaware and ultimately causes the plaintiff's injury.[34] The Court found that there was an intent on the part of Partek to serve the Delaware market, based on the fact that Partek engaged Huxley as its exclusive distributor and solicited business from the country as a whole, including Delaware.[35] The Court also found that, as a result of this solicitation, Partek shipped up to 50 tons of asbestos to Delaware per month and earned hundreds of thousands of dollars from its sales, and the plaintiff's injury arose out of exposure

---

*Home Prods. Corp.*, 768 A.2d 518 (Del. Super. 2000); *see also Belden Tech., Inc. v. L.S. Corp.*, 829 F.Supp.2d 260 (D.Del. 2010); *Power Integrations, Inc. v. BCD Semiconductor Corp.*, 547 F.Supp.2d 365 (D.Del. 2008). Hence, the Court finds that the "dual jurisdiction" doctrine is still valid in Delaware. If the "dual jurisdiction" doctrine adopted by *Boone* is to be further clarified or even overturned, that decision should be made by the Delaware Supreme Court.

[33] *Boone*, at 1158.

[34] *Id.*

[35] *Id.* HKK argues that an intent to serve the U.S. market as a whole does not establish an intent to serve Delaware in light of recent U.S. Supreme Court cases. As discussed in footnote 24, *supra*, dual jurisdiction is a concept created and applicable only in the analysis of the long-arm statute. As far as the long-arm statute is considered, a nonresident defendant's "intent to serve the United States market is sufficient to establish an intent to serve the Delaware market, unless there is evidence that the [defendant] intended to exclude [Delaware] from its marketing and distributing efforts . . . ." *Hedger*, at *7 (internal citations omitted).

10

to the asbestos sold by Partek.[36]  Thus, Partek was found to be subject to the jurisdiction of this Court.

Plaintiff argues that this case fits into *Boone*'s "dual jurisdiction" scenario. The Court agrees. The facts here are very similar to those in *Boone*. HKK set up HKU, a Delaware corporation, as its exclusive U.S. distributor, for the purpose of selling its products in the U.S. market, including Delaware. Under *Boone*, this demonstrates HKK's intent to serve Delaware. Although the factual record does not contain any specific sales data for the NV83A3 nail guns, the fact that they are mass-marketed, mass-produced consumer products offered for sale through Lowe's, when viewed in a light most favorable to Plaintiff, supports a strong inference that significant amounts of NV83A3 nail guns have been sold in each state, including Delaware. And it is undisputed that Plaintiff was injured by a NV83A3 nail gun used in Delaware as a result of these sales. Hence, the facts in this case satisfy the "dual jurisdiction" requirements established in *Boone*. The first prong of the jurisdiction analysis, the long-arm statute, is met.

**B. Due Process Clause**

The next step is to determine whether this case passes constitutional Due Process mustor. Due Process requires that the defendant has sufficient "minimum

---

[36] *Boone*, at 1158.

11

contacts" with the forum state, such that subjecting him to the forum's jurisdiction "does not offend traditional notions of fair play and substantial justice."[37]

### a. Minimum Contacts

To establish specific jurisdiction, "minimum contacts" require a showing that the defendant "purposefully avails itself of the privilege of conducting activities" within the forum state, and that the controversy "arises out of or relates to" those in-state activities.[38]

Plaintiff's argument primarily rests on the "stream of commerce" theory. This term was first utilized by the U.S. Supreme Court in *World-Wide Volkswagen Corp. v. Woodson*, where it held that a foreign corporation meets the "purposeful availment" requirement, and is subject to a forum state's jurisdiction, if it "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state."[39] Since *World-Wide Volkwagen*, the U.S. Supreme Court has twice attempted and twice failed to clarify the contours of the stream of commerce theory of jurisdiction, resulting in several competing interpretations, none of which garnered a majority.

---

[37] *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (internal citations omitted).
[38] *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (internal citation omitted); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal citation omitted).
[39] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980).

In *Asahi Metal Industry Co. v. Superior Court of California, Solano County*, Justice O'Connor, joined by three justices, opined that "placement of a product into the stream of commerce, without more," does not establish personal jurisdiction.[40] Rather, there should be some "additional conduct" of the defendant indicating "an intent or purpose to serve the market in the forum state."[41] Simple awareness was deemed not enough.[42] In contrast, Justice Brennan, also joined by three members of the Court, found that minimum contacts exist when the defendant is aware that its products are being marketed in the forum state, as long as the sale is part of "the regular and anticipated flow" of commerce, but not some "unpredictable currents or eddies," i.e., an isolated occurrence.[43] Finally, Justice Stevens, rendering a third opinion, found that "the volume, the value, and the hazardous character" of the product affects the "purposeful availment" determination and suggested that a "regular course of dealing" that results in deliveries of over 100,000 units annually would constitute "purposeful availment."[44]

---

[40] *Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102, 112 (1987) (plurality opinion).

[41] *Id.* Justice O'Connor did not provide a definition for the required "additional conduct," but gave some examples that qualify, such as "designing the product for the market in the forum State," "advertising in the forum State," "establishing channels for providing regular advice to customers in the forum State," or "marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Id.*

[42] *Id.*

[43] *Id.* at 117 (Brennan, J., concurring in part and concurring in judgment).

[44] *Id.* at 122 (Stevens, J., concurring in part and concurring in judgment).

The next effort by the U.S. Supreme Court to revisit the stream of commerce doctrine and reconcile the competing opinions occurred in *J. McIntyre Machinery, Ltd. v. Nicastro*.[45] Unfortunately, the Court was still divided. Justice Kennedy, writing for four justices, seemed to have embraced the "stream of commerce plus" test articulated by Justice O'Connor, and further narrowed the test by announcing that a defendant's transmission of goods justifies personal jurisdiction only where "the defendant can be said to have targeted the forum."[46] According to Justice Kennedy, marketing and sales efforts directed at the United States generally are not enough.[47] In contrast, Justice Breyer's concurring opinion declined to pronounce a broad rule that "refashion[s] basic jurisdiction rules," and found that the matter can be resolved solely by adhering to the Court's precedents.[48] Applying the Court's precedents, Justice Breyer found that personal jurisdiction could not be constitutionally asserted over the defendant foreign manufacturer, under any of the three *Asahi* tests, based on the following facts: the manufacturer's agreement with a U.S. distributor to pursue customers throughout the United States; a single sale in the forum state; and the manufacturer's business-related activities in various states

---

[45] 564 U.S. 873 (2011).

[46] *Id.* at 882.

[47] *Id.* at 886 ("These facts may reveal an intent to serve the U.S. market, but they do not show that J. McIntyre purposefully availed itself of the New Jersey market.").

[48] *Id.* at 890 (Breyer, J., concurring in judgment). Justice Breyer found that the case did not present issues concerning recent changes to modern commerce and communication, and therefore it was "unwise to announce a rule of broad applicability without full consideration of the modern-day consequences." *Id.* at 887 (Breyer, J., concurring in judgment).

other than the forum state.[49] Those key facts present in *J. McIntyre* are much more attenuated than those present in this case.

Under *Marks v. United States*, when there is not a single controlling opinion, the holding of the U.S. Supreme Court should be viewed as "the position taken by those Members who concurred in the judgments on the narrowest grounds."[50] Circuit courts interpreting *J. McIntyre* have concluded that Justice Breyer's concurring opinion furnished the "narrowest grounds" for the decision.[51] Hence, applying Justice Breyer's approach, the law remains the same after *J. McIntyre*, and courts may, without establishing a broad bright-line rule, continue to attempt to reconcile the competing Supreme Court pronouncements of the stream of commerce doctrine.[52] The Court here follows this approach.

There are sufficient facts in this case that support the exercise of jurisdiction over HKK under at least two of the three *Asahi* tests. In this case, HKK (through HKU) solicited business from the whole U.S. market, and as a result of that

---

[49] *Id.* at 889 (Justice Breyer found that a single sale in the forum state did not constitute a "regular flow" or "regular course" of sales, and that there was no "something more" such as those circumstances listed in Justice O'Connor's plurality opinion).

[50] *Marks v. U.S.*, 430 U.S. 188, 193 (1977).

[51] *See In Re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 753 F.3d 521, 541 (5th Cir. 2014) (citing *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1363 (Fed. Cir. 2012)); *see also Williams v. Romarm, SA*, 756 F.3d 777, 784 (D.C. Cir. 2014). *But see Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 780 (3rd. Cir. 2018) (applying Justice Kennedy's plurality opinion in *J. McIntyre* and holding that efforts "to exploit a national market that necessarily included [the forum state]" are insufficient to establish personal jurisdiction).

[52] *In re Chinese-Manufactured Drywall*, at 541.

solicitation, HKK's products were sold in Delaware and in each of the fifty states, through national retailers such as Lowe's. So there was certainly a "regular and anticipated flow of commerce" into Delaware, rather than some "random, fortuitous, or attenuated contacts" which the Supreme Court held are not enough to hale a defendant into a jurisdiction.[53] And HKK was clearly engaged in a "regular course of dealing" with HKU, resulting in the entry of a high volume of products with a hazardous character into Delaware. Hence, this case satisfies the two tests articulated by Justice Brennan and Justice Stevens.

This case arguably also satisfies Justice O'Connor's plurality test. In *Asahi*, a Japanese tube valve assembly manufacturer sold its products to a Taiwanese tire tube manufacturer, and the Taiwanese corporation incorporated the valve assemblies into its tire tubes and sold the tire tubes to the U.S. market.[54] Unlike the Japanese manufacturer in *Asahi*, it is not that HKK simply placed its nail guns into the stream of commerce, and the commerce eventually swept the nail guns into Delaware. Instead, HKK intended to exploit the U.S. market, including Delaware, and took the affirmative step to set up a Delaware subsidiary, HKU, to carry out that goal. HKK and HKU have two directors in common. HKK was fully aware of, and likely anticipated, the cooperation with Lowe's. This was a considered and contemplated

---

[53] *Burger King*, 471 U.S. at 475.
[54] *Asahi*, 480 U.S. at 106.

16

sales approach by HKK. Hence, there is "something more" than simply placing the goods into the stream of commerce. This factual circumstance is very similar to "marketing the product through a distributor who has agreed to serve as the sales agent in the forum State," which Justice O'Connor acknowledged as sufficient to establish the "additional conduct."[55]

HKK argues that an intent to serve the entire U.S. market does not establish the required minimum contacts after *J. McIntyre*, but rather there must be an action that targets the forum. That position comes from Justice Kennedy's plurality opinion, which, as discussed above, does not control. Justice Breyer's concurrence, which the Court finds is the narrowest ruling in that case and thus controlling, has explicitly rejected to announce such a rule of "broad applicability."[56] Justice Breyer simply found that an agreement with a national distributor which resulted in only one product being sold in the forum state, plus the defendant's officer's attending trade shows in other states, did not qualify as "something more." However, the record in this case contains more pertinent facts than that in *J. McIntyre*. HKU is not merely an unrelated, third-party distributor. Instead, it is a wholly-owned subsidiary of HKK incorporated in Delaware and established to sell HKK's products throughout the U.S., including Delaware. Unlike the single sale in *J. McIntyre*, a

---

[55] *Id.* at 112.
[56] *J. McIntyre*, at 887 (Breyer, J., concurring in judgment).

high quantum of HKK's products have actually been displayed in the numerous stores of national retailers like Lowe's and sold in Delaware. The facts here are distinguishable from those in *Asahi* and *J. McIntyre*. And the Court finds that exercising jurisdiction is consistent with the mandates articulated in those two U.S. Supreme Court precedents.

During oral argument, HKK relied heavily upon *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*,[57] and argued that it nullifies the "stream of commerce" theory. The Court disagrees. In *Bristol-Myers*, a group of more than 600 plaintiffs, most of whom were not California residents, filed actions in a California state court based on injuries allegedly caused by a drug manufactured and sold by the defendant.[58] The issue was whether jurisdiction existed with regard to those nonresident plaintiffs' claims. The issue in *Bristol-Myers* was resolved based upon circumstances that are totally different from those at issue in this case. In that case, there was no dispute that the defendant purposefully availed itself of the California market.[59] The U.S. Supreme Court, however, found no jurisdiction because those nonresidents' claims did not arise out of or relate to the defendant's California contacts.[60] The Court noted: "What is needed—and what is

---

[57] 137 S.Ct. 1773 (2017).
[58] *Id.* at 1778.
[59] *Id.*
[60] *Id.* at 1781–82.

missing here—is a connection between the forum and the specific claims at issue."[61]

Here, there is a connection. Plaintiff was performing a job duty in Delaware when he was allegedly injured by a HKK nail gun. The nail gun was supplied to Plaintiff by his Delaware employer. There is no dispute that Plaintiff's claims are connected to HKK's Delaware contacts. Therefore, the constitutional "minimum contacts" requirement is satisfied here as HKK purposefully availed itself of the privilege of doing business in Delaware, and Plaintiff's claims arise out of those activities.

### b. Reasonableness

Once the defendant has been found to have purposely established "minimum contacts" within the forum state, the defendant could defeat personal jurisdiction only if it presents "a compelling case that the presence of some other considerations would render jurisdiction unreasonable."[62] Those considerations include: "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and "the shared interest of the several States in furthering fundamental substantive social policies."[63]

---

[61] *Id.* at 1781.
[62] *Burger King*, at 477.
[63] *Id.* (quoting *World-Wide Volkswagen*, 444 U.S. at 292).

19

HKK did not make an unreasonableness argument in either its Exceptions or at oral argument. After a brief review of the above factors, the Court finds that they favor jurisdiction in any event. The Court acknowledges that there may be a slight burden on HKK to defend this matter in Delaware. But this is true for any such foreign defendant in a personal injury dispute, and does not, in and of itself, defeat jurisdiction. Delaware has a strong interest in guarding the safety and welfare of its citizens and deterring the introduction of dangerous products into this State. Plaintiff was allegedly injured by a dangerous product and clearly has an interest in obtaining relief from its designer and manufacturer in a convenient forum. There is no argument that any other state in the U.S. would provide a more effective and efficient forum, or have a stronger interest, in the resolution of the current matter. Therefore, weighing the combined interest of Plaintiff and Delaware against the burden on HKK leads this Court to conclude that jurisdiction over HKK is reasonable.

While agreeing with the Special Master's final conclusion, Plaintiff takes exception to the Special Master's omission in considering an agency theory that, Plaintiff contends, alternatively supports the finding of jurisdiction. Plaintiff seems to concede that the current factual record does not support an agency relationship between HKK and HKU, but contends that more discovery is needed to establish such a relationship. Since the Court has found jurisdiction under the "stream of commerce" theory, it is unnecessary to allow additional jurisdictional discovery. For

the same reason, Plaintiff's request for additional discovery regarding HKK's patent infringement case filed in the District Court for the District of Delaware is also denied.

## IV. CONCLUSION

For the foregoing reasons, jurisdiction is conferred by Delaware's long-arm statute, and does not violate HKK's Due Process rights. HKK's Motion to Dismiss for Lack of Personal Jurisdiction is hereby **DENIED**.

**IT IS SO ORDERED.**

Sheldon K. Rennie, Judge

21